CAFETEROS DE PUERTO RICO, demandante y apelante, *v.* SECRETARIO DE HACIENDA, demandado y apelado.

Número 12050.

*Sometido:* 4 de marzo de 1959. *Resuelto:* 16 de mayo de 1961.

*Erasto Arjona Siaca,* abogado de la apelante; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Carlos G. Látimer, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Como parte de un programa de rehabilitación de la industria cafetera de Puerto Rico, la Asamblea Legislativa de Puerto Rico aprobó en el lustro de 1935 a 1940 una serie de medidas para regular la venta de dicho producto,[1] proveer para el estudio del problema cafetero,[2] fijar precios para el producto y cuotas de producción,[3] e imponer una contribución especial o arbitrio a los fines de crear un fondo para el fomento del mercado del café local.[4] La Ley Núm. 255 de 15 de mayo de 1938 autorizó al Comisionado de Agricultura a fijar el precio del café crudo que recibiría el productor, dentro del límite mínimo de dieciocho centavos y máximo de veintidós centavos por libra. El precio mínimo fijado para el año 1938-39 fue de veinte dólares por quintal. Para esta fecha estaba vigente la Ley Núm. 116 de 15 de mayo de 1936 que imponía una contribución de un cuarto de centavo por cada libra de café

[1] Ley Núm. 3 de 11 de julio de 1935 (Leyes, pág. 47), enmendada por las Leyes Núm. 248 de 15 de mayo de 1938 (Leyes, pág. 486) y Núm. 111 de 1 de mayo de 1940 (Leyes, pág. 679).

[2] Ley Núm. 65 de 4 de mayo de 1938 (Leyes, pág. 184).

[3] Ley Núm. 255 de 15 de mayo de 1938 (Leyes, pág. 498), enmendada por las Leyes Núm. 124 de 6 de mayo de 1939 (Leyes, pág. 643), Núm. 112 de 1 de mayo de 1940 (Leyes, pág. 695) y Núm. 131 de 2 de mayo de 1940 (Leyes, pág. 753).

[4] Ley Núm. 145 de 11 de mayo de 1939 (Leyes, pág. 703) enmendada por las Leyes Núm. 13 de 3 de junio de 1939 (Leyes, pág. 39) y Núm. 157 de 8 de mayo de 1940 (Leyes, pág. 933). Esta Ley 145 derogó la Núm. 116 de 15 de mayo de 1936 (Leyes, pág. 679).

que se vendiera en Puerto Rico. Mediante la Ley 145 de 11 de mayo de 1939 se impone una contribución especial de una y medio centavos por cada libra de café crudo que se vendiese para el consumo local y expresamente se dispuso que "el precio mínimo que el Comisionado de Agricultura y Comercio fijara de conformidad con las disposiciones de la Ley Núm. 255 de 1938 *quedará aumentado en el importe a que se contrae la contribución aquí impuesta*".(⁵) Esta disposición armonizaba con la Ley 124 de 6 de mayo de 1939, que enmendaba la Ley Núm. 255 de 1938, y que en relación con la fijación de precio para el café adicionó un disponiéndose al efecto de que "el Comisionado de Agricultura y Comercio estará facultado para fijar el precio de la reventa del café crudo base pilado, que en ningún caso deberá ser menor que el precio pagado al agricultor productor *más el importe de los impuestos vigentes sobre el café*". Para el año 1939–40 se fijó un precio mínimo de $18.50 por quintal de café que, sumado al arbitrio de $1.50 por quintal hacen un total de $20.(⁶) En virtud de las leyes citadas todo comprador, manipulador y traficante de café crudo estaba obligado a pagar un precio que no fuera menor del que se fijare por el Comisionado (sec. 3).

Cafeteros de Puerto Rico es una asociación cooperativa de agricultores y cosecheros de café que, cuando comenzó a regir la Ley Núm. 145 de 1939 que imponía una contribución especial de uno y medio centavos por cada libra de café crudo que se vendiese, tenía en su poder café procedente de la cosecha de 1938–39. Como había dudas sobre la aplicación de la nueva ley al café en poder de la cooperativa, se ges-

---

(⁵) Esta ley comenzó a regir en 9 de agosto de 1939 por no haber sido aprobada por las dos terceras partes de todos los miembros electos para cada cámara legislativa.

(⁶) La información sobre los precios mínimos fijados por el Secretario de Agricultura ha sido tomada del Informe Anual del Secretario de Agricultura y Comercio al Gobernador de Puerto Rico, Año Fiscal 1939–40, págs. 116 y 117.

tionó un pronunciamiento administrativo sobre el particular, y al efecto, mediante una carta circular de fecha 21 de agosto de 1939, el entonces titular del Departamento de Hacienda. indicó que la nueva ley era aplicable solamente al café producido en las cosechas de 1939–40 en adelante, y que el café de cosechas anteriores pagaría únicamente el impuesto de un cuarto de centavo por libra, según dispuesto por la Ley Núm. 116 de 1936.

De la cosecha 1938–39 se vendieron localmente 3,857,052.91 libras, de las cuales 886,527.91 libras fueron vendidas antes de la vigencia de la Ley Núm. 145 de 1939, y 2,970,525 libras, después de dicha fecha. La cooperativa satisfizo el arbitrio sobre toda la cosecha a razón de un cuarto de centavo por libra, y en tal virtud hizo dos pagos de $4,644.05 y $4,815.22, en 11 de noviembre de 1939 y 27 de febrero de 1940,[7] o sea un total de $9,459.27.

En 19 de mayo de 1942, un nuevo Tesorero requirió a la apelante el pago de la suma de $37,314.93, que representa la diferencia entre el arbitrio de uno y medio centavos y el de un cuarto de centavo calculado sobre una cantidad de 2,970,525 libras de café que, aunque procedentes de la cosecha 1938–39, fueron vendidas con posterioridad a la vigencia de la Ley Núm. 145 de 1939 que había aumentado la contribución, y a base del precio mínimo que el Comisionado de Agricultura fijó para el año 1939–40. Para evitar

[7] La apelante insiste en su alegato en que una expresión contenida. en la opinión dictada por este Tribunal en *Cafeteros de Puerto Rico* v. *Tesorero*, 74 D.P.R. 752, 756 (1953) al efecto de que "El 17 de noviembre de 1939 y el 27 de febrero de 1940 la apelante vendió el café de la cosecha 1938–39, descontando y reteniendo del precio de venta el importe de la contribución de un cuarto de centavo por libra, que pagó al Tesorero", constituye la ley del caso. Independientemente de que este pronunciamiento era innecesario a los fines del resultado a que se llegó en dicho litigio, que fue resuelto *exclusivamente* a base de la improcedencia. del remedio de injunction para impedir el cobro de una contribución, la realidad es que en el presente caso la prueba lo único que demuestra. es que en la fecha mencionada se pagó el arbitrio, pero no que se efectuara. la venta del café.

el cobro de esta suma y los intereses correspondientes, la cooperativa recurrió a los tribunales en una demanda que denominó de nulidad de cobro de contribuciones, que fue finalmente declarada sin lugar. *Cafeteros de Puerto Rico* v. *Tesorero*, 74 D.P.R. 752 (1953).

Ante esa situación, la apelante pagó bajo protesta el importe de los arbitrios e intereses en 12 de junio de 1953, y después de agotar la vía administrativa, interpuso la presente acción en solicitud de reintegro. En esta acción se hacen sustancialmente los mismos planteamientos en cuanto a la improcedencia del cobro de los arbitrios que en la demanda anterior. Véase, *Cafeteros de Puerto Rico* v. *Tesorero*, supra, especialmente las págs. 758 y 759. El Secretario de Hacienda solicitó la desestimación de la demanda aduciendo que el tribunal carecía de jurisdicción para entender en la acción "toda vez que la faz de la demanda no aparece ni se alega expresamente que la demandante haya sufrido el peso del pago de los arbitrios cuyo reintegro solicita", y por no aducir hechos constitutivos de una causa de acción. Esta solicitud de desestimación fue declarada sin lugar.[8] El demandado contestó, y en su contestación reprodujo como defensa especial la falta de jurisdicción por el fundamento indicado.

---

[8] La resolución dictada lee como sigue:

"Respecto al primero, o sea la falta de jurisdicción, es indudable que, según lo alegado por la recurrente:

1.—Esta pagó, en junio de 1953 los arbitrios cuya devolución reclama.

2.—Ella era una asociación cooperativa de agricultores y cosecheros de café, que actuó como depositaria de este producto. Ella se dedicaba a recibirlo, depositarlo y acondicionarlo para su distribución y venta posterior. A ella no pertenecía el café que ha sido objeto del arbitrio de que se trata.

Y si *no* era *de ella,* en la venta del mismo no pudo realizarse el traspaso de recargo alguno, a ella, en concepto de impuestos a ella *no* cobrables.

Forzoso es concluir, pues, que los impuestos cuya devolución reclama no han podido ser, por ella traspasados a nadie. Es menester resolver, y resolvemos, que a la parte demandada no le asiste la razón al sostener que este Tribunal carece de jurisdicción para conocer del caso del epígrafe."

Fue el pleito a juicio. La cooperativa demandante ofreció prueba documental que consistió de: 1) un estado demostrativo del café de la cosecha de 1938–39 vendido durante la vigencia de las Leyes Núm. 116 de 1936, Núm. 145 de 1939 y Núm. 157 de 1940; 2) cuatro facturas de pago de arbitrios; 3) copia de la circular de 1939; 4) una certificación expedida por el entonces Auditor de Puerto Rico sobre el arqueo final de la cuenta de la "Puerto Rican Coffee Price Stabilizing Corporation"; 5) un aviso dirigido a los agricultores de café por el Tesorero de Puerto Rico en 22 de julio de 1939, publicado en el periódico "El Día"; 6) una copia de una carta de 19 de agosto de 1942 dirigida por el Tesorero de Puerto Rico a la apelante confirmando su determinación de requerir el pago de arbitrios por la suma de $37,314.93; 7) copia de una solicitud de reconsideración de fecha 20 de septiembre de 1946 formulada por la cooperativa apelante; 8) copia de una factura de fecha 12 de junio de 1953 requiriendo el pago de arbitrios por la suma de $37,314.93 e intereses por $24,634.07, o sea una cantidad total de $61,949, con la expresión al dorso de la misma de los fundamentos invocados por la cooperativa para efectuar el pago bajo protesta; 9) copia de la solicitud de reintegro; 10) copia de la resolución del Secretario de Hacienda denegando el reintegro; 11) copia de un requerimiento de pago de fecha 3 de junio de 1953; 12) copia del pago bajo protesta, y, 13) copia de la declaración prestada por el señor Ramiro Colón, Gerente General de la apelante prestada el día 7 de octubre de 1948 mientras se ventilaba ante el Tribunal de Distrito de San Juan el pleito sobre nulidad de cobro de contribuciones. A la terminación de la presentación de esta prueba, la demandante solicitó permiso para conformar las alegaciones con la prueba, que, a su juicio, había establecido que la parte actora había sufrido el peso total del pago bajo protesta y no lo había traspasado a ninguna otra persona.

Con la objeción del Secretario, el tribunal a quo admitió la enmienda propuesta "sin perjuicio de y reservándose obviamente el derecho a denegarla, después de conocer toda esa prueba y resolver el caso en su fondo". En una audiencia posterior, el Secretario ofreció prueba documental consistente en: 1) determinadas actas de reuniones de la Junta de Directores de la cooperativa; 2) copia de un reglamento promulgado por el Tesorero en 18 de septiembre de 1939; y, 3) copia de un informe sobre la investigación practicada por el agente de rentas internas Víctor Fragoso.

El Tribunal Superior desestimó la demanda por falta de jurisdicción, expresándose en la siguiente forma:

"Para la adquisición de la jurisdicción es indispensable que la demandante *pruebe* que ella sufrió el peso del *pago* de los arbitrios cuya devolución se reclama, es decir, que no traspasó dicho pago a persona alguna.

"Mas con la evidencia aducida no se ha demostrado tal cosa. Se ha probado, en cambio, algo que es completamente lo contrario—es decir, que Cafeteros de Puerto Rico, según lo que convino con el demandado, habría de agregar a los precios de venta del café de *sus* socios, y entregar al erario, los arbitrios que, por las leyes a que se refiere este pleito, fueron impuestos para ser pagados por los verdaderos *compradores* de ese producto.

"En enero 8 de 1954, cuando declaramos sin lugar la moción del demandado para que el tribunal resolviera que carecía de jurisdicción para conocer del pleito, todavía no se había presentado prueba al efecto de *que en los precios de venta* del café, a ser vendido por Cafeteros de Puerto Rico, se habría de agregar, y se agregó, el importe de los arbitrios satisfechos, a ser entregados al Secretario de Hacienda."

Contra esta sentencia se interpuso recurso de apelación.

 Tanto en 12 de junio de 1953, cuando se pagaron los arbitrios, como en 11 de octubre de 1953, fecha en que se inició la querella en solicitud de reintegro, la ley disponía

que sólo podía acudir en solicitud de revisión de una dene-
gatoria del reintegro de cualquier arbitrio la persona que
hubiese sufrido el peso del pago del mismo; "y una alegación
en tal sentido y la prueba de la misma en su oportunidad,
serán consideradas como requisitos jurisdiccionales".(⁹) El
otro requisito jurisdiccional exigido en estos casos se refiere

---

(⁹) La Ley Núm. 235 de 10 de mayo de 1949 (Leyes, pág. 733,
13 L.P.R.A. sec. 281 et seq.), conocida como Ley de Procedimiento Con-
tributivo Uniforme, dispone en su artículo 2(6) que se podrá recurrir
de una determinación negándose a conceder el reintegro de cualquier con-
tribución, "radicando su demanda en el Tribunal de Contribuciones *en
la forma dispuesta* por la ley que crea dicho Tribunal . . .", y la Ley
Núm. 328 de 13 de mayo de 1949 (Leyes, pág. 997) que reorganizó dicho
tribunal determinó en su artículo 2 que "Además de la jurisdicción con-
ferídale por leyes especiales, el Tribunal de Contribuciones de Puerto Rico
tendrá jurisdicción, de carácter exclusivo, para conocer de todos los casos,
acciones, procedimientos o recursos especiales o extraordinarios relacio-
nados con, o que afecten la, imposición, cobro y pago de toda clase de
contribuciones incluyendo contribuciones sobre la propiedad, contribuciones
sobre herencia y donaciones, contribuciones sobre ingresos, contribuciones
sobre enriquecimiento injusto, contribuciones de seguro social, arbitrios,
licencias y cualesquiera otras contribuciones o impuestos, así como para
conocer de las reclamaciones de contribuciones cobradas por un procedi-
miento ilegal, o que voluntariamente o sin notificación del Tesorero de
Puerto Rico se hubieran pagado indebidamente o en exceso, cuyo reintegro
esté autorizado por ley y haya sido rehusado por el Tesorero de Puerto
Rico; *Disponiéndose*, sin embargo, que esta jurisdicción no podrá invo-
carse ante el Tribunal por persona alguna, hasta que sobre el asunto
en discusión haya recaído la correspondiente resolución administrativa
por parte del Tesorero de Puerto Rico, de acuerdo con la ley; *Y dis-
poniéndose, además,* que tan sólo podrá acudir en apelación ante el
Tribunal de Contribuciones de Puerto Rico en solicitud de revisión de
una denegatoria de reintegro de cualquier contribución o arbitrio, la
persona que haya sufrido el peso del pago de la contribución o arbitrio
en discusión; y una alegación en tal sentido y la prueba de la misma en
su oportunidad, serán consideradas como requisitos jurisdiccionales".
Cf. *Larroca* v. *Aboy vda. Pérez y Secretario,* ante, pág. 492 (1961).

La exigencia de este requisito jurisdiccional fue requerido con toda
probabilidad como consecuencia del resultado final del pleito de reintegro
de arbitrios incoado en *Puerto Rico Tobacco Corporation* v. *Buscaglia,*
62 D.P.R. 811 (1944). En dicho caso se ordenó el reintegro de ciertas
cantidades *pagadas* por la demandante en concepto de arbitrios impuestos
sobre la venta de cigarrillos, y que obviamente, dicha demandante había
traspasado al consumidor, incluyéndolos en el precio de venta del artículo.
Cf. *Pyramid Products* v. *Buscaglia,* 64 D.P.R. 828 (1945); *A. Fisher
Tobacco Co.* v. *Buscaglia, Tes.,* 65 D.P.R. 125 (1945).

al término de treinta días a partir de la fecha del depósito en el correo de la notificación de la resolución denegatoria del reintegro. ([10])

Recientemente expresamos en *Larroca* v. *Aboy vda. Pérez y Secretario de Hacienda*, ante, pág. 492 (1961) que "Conocido es el principio que de ordinario una acción judicial que requiera un fallo sobre si procede o no imponer y cobrar una contribución o si existe la obligación o no de pagarla, es una demanda contra el Soberano y requiere el consentimiento del Estado para que se le demande." Estos llamados "requisitos jurisdiccionales" no son otra cosa que la expresión de condiciones o requisitos cuyo cumplimiento el Estado exige para que se le demande. Por tanto, deben ser cumplidos estrictamente, y en la misma forma que se ha exigido por el legislador. *R. Santaella & Bros.* v. *Tribl. de Contribuciones*, 66 D.P.R. 868 (1947).

El propósito de exigir que la acción de reintegro se presente por la persona o entidad que efectivamente ha sufrido el peso de la contribución es evitar que pueda beneficiarse con cualquier reembolso que pueda obtenerse, una persona que no pagó la cantidad reclamada. Esto es especialmente cierto en los casos de arbitrios, en los que, por lo general, la contribución se satisface por el consumidor como parte del precio de venta. La preocupación del legislador sobre este asunto se evidencia aún más al considerar la Ley Núm. 67 de 7 de mayo de 1945 (Leyes, pág. 249, 13 L.P.R.A. sec. 2231 et seq.) denominada "Ley de Enriquecimiento Injusto" que impone una contribución de ingresos especial de ochenta por ciento sobre el ingreso neto derivado del reintegro de arbitrios siempre que la persona a quien se hubiere hecho el reintegro hubiere pasado tales arbitrios a otra persona mediante la venta de los artículos, bien incluyéndolos en el

---

([10]) Artículo 2(6) de la Ley Núm. 235 de 10 de mayo de 1949, supra. Para un recuento de la legislación sobre reintegro de contribuciones "indebidamente" cobradas, véase *Gerardino* v. *Tribunal de Contribuciones*, 68 D.P.R. 219 (1948).

precio de venta, o de otro modo. Posteriormente, y para los casos en que el Secretario de Hacienda conceda administrativamente un reintegro o crédito por contribuciones pagadas indebidamente, se le requirió una previa determinación administrativa de que el contribuyente ha sufrido el peso del pago de la contribución. Ley Núm. 232 de 10 de mayo de 1949 (Leyes, pág. 721, 13 L.P.R.A. sec. 261).

■ Según aparece de la relación que hemos hecho anteriormente, la demandante Cafeteros de Puerto Rico no alegó en la demanda que había sufrido el peso del pago de los arbitrios cuyo reintegro reclama. Sin embargo, en la vista del caso celebrada el día 27 de abril de 1954 solicitó que las alegaciones se entendieran enmendadas en ese sentido. El caso no se sometió definitivamente hasta el día 23 de febrero de 1955. Para esta fecha la redacción de la ley que exige tal alegación había sido modificada para que lea "y una alegación en tal sentido y la prueba de la misma en su oportunidad serán consideradas como requisitos sin el cumplimiento de los cuales el Tribunal Superior de Puerto Rico *no tendrá facultad para fallar el asunto*". Ley Núm. 5 de 5 de octubre de 1954 (Leyes, pág. 43). Resulta pues, que para la fecha en que se falló el caso ya la demandante había formulado la alegación necesaria. No obstante, su reclamación debe ser desestimada porque, a nuestro juicio, no tuvo éxito en *probar* que sufrió el peso del pago de los arbitrios. Veamos:

La prueba documental de la demandante que hemos reseñado anteriormente sólo tiene el efecto de probar que pagó bajo protesta, en 12 de junio de 1953, el importe de los arbitrios reclamados por el Secretario, y que solicitado el reintegro dentro del término estatutario de cuatro años, le fue denegado. Como obviamente esta evidencia era insuficiente, y ante el reiterado planteamiento de falta de jurisdicción del representante legal del Secretario, se ofreció y admitió la declaración que había prestado don Ramiro Colón en *7 de*

*octubre de 1948, cuando aun no se habían pagado los arbitrios,* ante el entonces Tribunal de Distrito de San Juan en un pleito en el cual se planteaba idéntica cuestión sobre la improcedencia del pago de los arbitrios.

En la parte pertinente a la prueba sobre el hecho de que la apelante sufrió el peso del pago de los arbitrios, el testimonio del señor Colón puede resumirse en la siguiente forma: es el Gerente General de la Cooperativa de Cafeteros de Puerto Rico, y desde el año 1925 ha estado interviniendo en los asuntos y negocios de ésta; que la cooperativa recibe el café de los socios en depósito y lo vende en el mercado por cuenta de éstos; que cuando se aprobó la Ley Núm. 145 de 1939, medida propulsada por los propios agricultores, que aumentaba el arbitrio de un cuarto de centavo a uno y medio centavos por libra de café crudo, surgieron dudas sobre el cobro de esta contribución especial en relación con parte de la cosecha del año 1938–39 que aún permanecía sin vender, y se solicitó del Tesorero de Puerto Rico que hiciese un pronunciamiento oficial sobre este asunto; que dicho funcionario expidió la circular Núm. 15 a que se ha hecho referencia anteriormente mediante la cual se determinó que el nuevo arbitrio se cobraría en relación con la cosecha de 1939–40 que aún no se había comenzado a recoger; que a tenor con esa interpretación administrativa "la cooperativa en el precio del café incluyó el cuarto de centavo por libra que le devolvió al Tesorero de Puerto Rico al hacer sus liquidaciones a los agricultores"; que el Tesorero exigió de las personas y entidades que tenían en su poder café de cosechas anteriores al año 1939–40 que rindieran un informe sobre sus existencias; que en relación con el café en poder de la cooperativa de la cosecha 1938–39 y anteriores se pagó al Tesorero un arbitrio de un cuarto de centavo por libra; que en relación con la cosecha del año 1939–40 se pagó un arbitrio de uno y medio centavos; que posteriormente un nuevo Tesorero requirió un pago adicional de uno y un cuarto centavos sobre el café que

la cooperativa tenía en existencia cuando comenzó a regir la Ley Núm. 145 de 1939, sin considerar la cosecha a que correspondía, "después de haberse liquidado a los socios todas las cosechas que estuvieran sujetas a esos arbitrios"; que la cooperativa actúa como agente de los agricultores, recibe el café de los cosecheros, "lo procesa (sic) y lo vende y le reintegra a los socios el valor de ese producto después de descontar los gastos habidos en su proceso (sic) y manejo"; que entre los gastos que se descuentan está el arbitrio pagado *"porque estaba incluido en el precio de acuerdo con el Tesorero";* que el importe del arbitrio *"cualquiera que fuese" bajo las leyes relacionadas* se lo *"ponían"* al precio del café en el mercado; "que el precio que prevacecía en aquel entonces en el mercado *incluía* ya el arbitrio que *había pagado el comprador* y nosotros [la cooperativa] vendíamos a esos mismos precios y al liquidar al socio le descontábamos la contribución para pagar al Tesorero"; que al vender el café la cooperativa lo hacía por un precio *que incluía el arbitrio;* que este era un impuesto que *lo pagaban* los compradores y a la larga los consumidores de Puerto Rico; [11] que si la interpretación administrativa original hubiese sido distinta "hubiéramos incluido en el precio la contribución"; que en 1942, cuando se hizo el requerimiento de pago adicional de arbitrios, no era posible cobrárselo a los compradores del café sobre el cual se imponía dicho impuesto adicional; que la costumbre de la cooperativa era vender el café crudo *e incluir el arbitrio en el mismo precio;* que el pago al Tesorero se hacía después de efectuadas las ventas; que aunque no está seguro cree que el café de las cosechas 1938–39 y 1939–40 se vendieron al mismo precio, porque no recuerda los precios mínimos que se fijaron por el Comisionado de

---

[11] "P.—¿De modo que éste era un impuesto que pagaban los compradores?

R.—Bueno . . . Lo pagaban los compradores, a la larga lo pagaban los consumidores de Puerto Rico." (T. E., págs. 49–50.)

Agricultura; ([12]) que los precios mínimos *incluían el arbitrio;* que el importe del arbitrio "se ingresaba (sic) en el *precio del café al comprador";* reiteró que "cuando nosotros vendimos en esa cosecha estaba incluido el arbitrio" y que "el precio a que nosotros vendíamos estaba incluido el arbitrio" y que ese precio "tiene que haber sido más o menos igual [al precio que vendieron los demás productores de café del 1939–40] porque esas son cuestiones del mercado"; que en cuanto a la cosecha del 1939–40 "ya todo el mundo pagó $1.50"; ([13]) que en cuanto a 72,000 y pico de libras que tenían en depósito al entrar en vigor la Ley Núm. 157 de 1940 el arbitrio computado a razón de un cuarto de centavo por libra se había pagado por adelantado.

De la declaración resumida no surge que la contribuyente haya sufrido el peso del pago de los arbitrios. A lo sumo, lo que resulta de la misma es que al procederse a liquidar a los asociados de la cooperativa no se les dedujo, como uno de los gastos en que se incurrió al disponer del café del año 1938–39, el importe del arbitrio a razón de uno y medio centavos por libra, sino solamente un cuarto de centavo por libra. Pero esto no establece que la demandante haya sufrido el peso del pago del arbitrio. La prueba competente al efecto tenía que demostrar que cuando la cooperativa dispuso del café de 1938–39 por venta al consumidor *no incluyó* el importe del arbitrio en el precio de venta. La única prueba sobre este extremo aparece del informe del agente Víctor Fragoso de 21 de noviembre de 1941, que fue admitido en

---

([12]) Efectivamente, el precio mínimo para la venta del café en 1938–39 fue de $20 por quintal; y en 1939–40 fue también de $20, o sea $18.50 de precio mínimo para el agricultor fijado por el Comisionado más $1.50 del arbitrio.

([13]) En la pág. 93 de la transcripción de la declaración del testigo Colón aparece una afirmación en el sentido de que "todo el café del 1938 al 1939 se vendió sin incluir el centavo y medio de contribución". Esta afirmación no es correcta porque el café se vendió después de dicha fecha, o sea en 1939–40, cuando el precio mínimo era de $18.50 por quintal más el arbitrio de $1.50.

evidencia como exhibit D del Secretario, que dice: "Los precios cotizados por Cafeteros de Puerto Rico, Inc. *al consumidor*, siempre mayores de $20, demuestran que cobraron al público la contribución." Esta afirmación no fue contradicha con la única prueba competente para ello, o sea, la demostración de que en el precio de venta no se incluyó el arbitrio de $1.50 por quintal de café. Es bueno recordar que para la fecha en que se vendió el café el *precio mínimo* fijado por el Secretario de Agricultura era de $18.50 por quintal "más el importe de los impuestos vigentes sobre el café", que hacen un total de $20 por quintal. Este precio mínimo de $20 resulta ser igual al prevaleciente antes de la aprobación de la Ley Núm. 145 de 11 de mayo de 1939. Como cuestión de realidad, si todo el café de la cosecha del año 1938–39 se hubiese vendido antes de la vigencia de la Ley 145 de 1939, el precio mínimo fijado por el Secretario de Agricultura, al agricultor se le hubiese liquidado un importe de $19.75 por quintal, menos los gastos. Pero al venderse parte de este café después de la vigencia de la ley mencionada, la liquidación al agricultor se redujo a $18.50 por quintal, pero ello se debió única y exclusivamente a la fijación de un precio mínimo distinto para la venta del producto, o sea de $20 (incluyendo el arbitrio de 25 por ciento por quintal) a $18.50, más el importe del arbitrio.

La parte apelante hace referencia en su alegato a una supuesta estipulación acordada en el acto del juicio al efecto de que, una vez practicada la investigación en los libros de la demandante por funcionarios del Departamento de Hacienda, si no se encontraba prueba de que se había pasado el arbitrio a otra persona, se reconocería el derecho al reintegro solicitado. Aparentemente la distinguida representación de la demandante se ha confundido sobre este punto, ya que de la transcripción solamente aparece su propia manifestación de que el caso quedaría sometido después

que se realizara la investigación de los documentos que interesaba revisar el Secretario.(14)

*No habiéndose probado que la contribuyente sufriera el peso del pago de los arbitrios, no erró el tribunal recurrido al desestimar la demanda, y procede confirmar la sentencia por éste dictada en 24 de mayo de 1956.*

El Juez Asociado Sr. Hernández Matos no intervino.

_____

(14) La parte pertinente de la transcripción, a las págs. 42 y 43, lee:
"Lcdo. Arjona: —Con la venia del Tribunal. Entendiéndose además, como así ha quedado estipulado que si estos señores van a Ponce y de la investigación que realicen de estos documentos, no encuentran los puntos que están alegando, se considerará el caso sometido."